Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS BERAUD,<br><br>   Plaintiff,<br><br>v.<br><br>MMA CAPITAL HOLDINGS, INC., MICHAEL FALCONE, FREDERICK PUDDESTER, JAMES PRESTON GRANT, CECIL E. FLAMER, CHRIS HUNT, LISA KAY, and SUZANNE G. KUCERA,<br><br>   Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Thomas Beraud ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.  This is an action against MMA Capital Holdings, Inc. ("MMA Capital" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of MMA Capital by FP Acquisition Parent, LLC ("Parent") and FP Acquisition Merger Sub, LLC ("Merger Sub"), a wholly owned subsidiary of Parent.[1]

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and Fundamental is headquartered in New York City.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

---

[1] Parent and Merger Sub are wholly owned by Fundamental Partners III, LP and Fundamental Partners IV, LP, each of which is an investment fund affiliated with Fundamental Advisors LP ("Fundamental").

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of MMA Capital common stock.

7. Defendant MMA Capital focuses on infrastructure-related investments, specifically focusing on debt associated with renewable energy, bond, and real estate investments. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "MMAC."

8. Defendant Michael Falcone ("Falcone") is Chairman of the Board of the Company.

9. Defendant Frederick Puddester ("Puddester") is a director of the Company.

10. Defendant James Preston Grant ("Grant") is a director of the Company.

11. Defendant Cecil E. Flamer ("Flamer") is a director of the Company.

12. Defendant Chris Hunt ("Hunt") is a director of the Company.

13. Defendant Lisa Kay ("Kay") is a director of the Company.

14. Defendant Suzanne G. Kucera ("Kucera") is a director of the Company.

15. Defendants Falcone, Puddester, Grant, Flamer, Hunt, Kay, and Kucera are collectively referred to herein as the "Individual Defendants."

16. Defendants MMA Capital and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. The Proposed Transaction

17. On May 24, 2021, MMA Capital announced that it had entered into a definitive merger agreement with an affiliate of Fundamental, under which it will be acquired by Fundamental in an all-cash transaction. Under the terms of the merger agreement, holders of MMA

Capital's common stock would receive $27.77 per share in cash upon the closing of the Proposed Transaction. The press release announcing the Proposed Transaction states, in pertinent part:

### Fundamental Advisors to Acquire MMA Capital Holdings in All-Cash Transaction

NEWS PROVIDED BY
**MMA Capital Holdings, Inc.**
May 24, 2021, 08:30 ET

BALTIMORE, May 24, 2021 /PRNewswire/ -- MMA Capital Holdings, Inc. (Nasdaq: MMAC) ("MMA" or the "Company"), an infrastructure finance company focused on providing debt financing for renewable energy projects, today announced that it has entered into a definitive merger agreement with an affiliate of Fundamental Advisors LP (together "Fundamental"), under which it will be acquired by Fundamental in an all-cash transaction valued at approximately $161.7 million (the "Merger Agreement").

Under the terms of the Merger Agreement, holders of MMA's common stock will upon the closing of the merger receive $27.77 per share in cash. This represents a 35% premium over the 90-day volume-weighted average share price ending May 21, 2021, and a 62% premium over the May 21, 2021, closing share price.

\*   \*   \*

### Approvals and Timing

The agreement has been approved by the Company's Board of Directors upon the unanimous recommendation of a Transaction Committee consisting of all disinterested directors.

The transaction, which is currently expected to close in the third quarter of 2021, is subject to customary closing conditions, including the approval of MMA's stockholders, who will vote on the transaction at a special meeting on a date to be announced. Closing of the transaction is also contingent on the simultaneous termination of the Company's external management agreement and the acquisition by Fundamental of certain platform assets from MMA's external manager pursuant to agreements that were executed concurrently with the Merger Agreement.

### Advisors

TD Securities (USA) LLC is serving as exclusive financial advisor, and King & Spalding and Gallagher Evelius & Jones LLP are serving as legal advisors, to MMA. Houlihan Lokey is serving as financial advisor, and Sidley Austin LLP is serving as legal advisor to Fundamental.

**About MMAC**

MMA Capital Holdings, Inc. focuses on infrastructure-related investments that generate positive environmental and social impacts and deliver attractive risk-adjusted total returns to our shareholders, with an emphasis on debt associated with renewable energy projects and infrastructure. MMA Capital is externally managed and advised by Hunt Investment Management, LLC, an affiliate of Hunt Companies, Inc. For additional information about MMA Capital Holdings, Inc. (Nasdaq: MMAC), please visit MMA Capital's website at www.mmacapitalholdings.com. For additional information about Hunt Investment Management, LLC, please see its Form ADV and brochure (Part 2A of Form ADV) available at https://www.adviserinfo.sec.gov.

18. On July 13, 2021, the Company filed a Schedule 14A Definitive Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

19. The Proxy Statement, which recommends that MMA Capital shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) MMA Capital's financial projections; (ii) the financial analyses performed by MMA Capital's financial advisor, TD Securities (USA) LLC ("TD Securities"), in connection with its fairness opinion; (iii) potential conflicts of interest involving TD Securities; and (iv) the sales process leading up to the Proposed Transaction.

20. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Reasons for the Merger; (iii) Recommendation of Our Board of Directors; and (iv) Opinion of MMAC's Financial Advisor.

21. Unless and until the material misstatements and omissions (referenced below) are remedied before the August 10, 2021 shareholder vote on the Proposed Transaction, MMA Capital shareholders will be forced to make a voting decision on the Proposed Transaction without full

disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning MMA Capital's Financial Projections

22.     The Proxy Statement omits material information concerning MMA Capital's financial projections.

23.     The Proxy Statement provides that, in connection with its fairness opinion, "TD Securities . . . reviewed certain financial projections and operating data prepared by the Manager[2] (the "MMAC Projections")[.]" *See* Proxy Statement at 44-45.

24.     The Proxy Statement further provides that, "[i]n performing [its] financial analyses . . . and in arriving at its opinion, TD Securities utilized and relied upon the MMAC Projections." *See* Proxy Statement at 46.

25.     The Proxy Statement, however, fails to disclose the MMAC Projections, despite the fact that such projections were prepared by the Company's Manager and were relied upon by TD Securities in connection with its fairness opinion and related financial analyses. This information is further material as the Company's shareholders are being cashed out and therefore will not have an opportunity to participate in the Company's future growth. Accordingly, the Company's shareholders need the MMAC Projections to adequately evaluate and assess the value of MMA Capital and its future growth, and in order to determine whether to approve or reject the Proposed Transaction. Therefore, the MMAC Projections, and all underlying assumptions thereto, must be disclosed to the Company's shareholders.

26.     The disclosure of this information is material because it would provide the

---

[2] The "Manager" is MMA Capital's external manager, Hunt Investment Management, LLC. *See* Proxy Statement at 6.

6

Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

27. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2. Material Omissions Concerning TD Securities' Analyses**

28. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by TD Securities.

29. The Proxy Statement fails to disclose the following concerning TD Securities' "*Net Asset Value Analysis*":

(1) MMA Capital's economic interest in the "Solar Ventures";

(2) the value of MMA Capital's "Real Estate Investments";

(3) the estimated fair value of MMA Capital's subordinated debt;

(4) the value of MMA Capital's net operating losses;

(5) the book values as of March 31, 2021 for MMA Capital's other assets and liabilities provided to TD Securities by the Company;

(6) the estimated value of MMA Capital's unallocated operating expenses;

(7) the individual inputs and assumptions underlying the (i) ranges of discount rates from 97% to 100%, 8.0% to 16.5%, and 13.0% to 15.0%, and (ii) range of multiples from 5.0x to 6.0x;

(8) the value of the Other Loans and the ERCOT Loans;

(9) the cash and other assets of Solar Ventures as of March 31, 2021;

(10) the gross value of Solar Ventures;

(11) the value of non-pro rata capital contributions made by MMA Capital's capital partner, and the total value of the partner's interest in Solar Ventures;

(12) the appraised values provided in the Appraisal Reports utilized for purposes of valuing the Company's Real Estate Investments, including the dates of internal portfolio reports of the Company included with "Appraisal Reports" as defined by the Proxy Statement;

(13) the value of future tax savings from MMA Capital's net operating losses;

(14) the forecasted interest and principal payments to be paid by MMA Capital on its subordinated debt securities;

(15) the capitalized debt issue costs;

(16) MMA Capital's equity interest in a residential real estate investment trust listed on the Main Board of the Johannesburg Stock Exchange;

(17) the gross amount of MMA Capital's "Operating Expenses";

(18) the Manager's estimate for 2021 Operating Expenses; and

(19) the number of shares of MMA Capital common stock outstanding on a fully diluted basis as of March 31, 2021.

30. With respect to TD Securities' "*Precedent Transactions Multiples Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each transaction TD Securities observed in its analysis.

31. With respect to TD Securities' "*Precedent Transaction Premiums Analysis*," the Proxy Statement fails to disclose the individual premiums paid in each transaction TD Securities observed in its analysis.

32. With respect to TD Securities' "*Trading Price Discount to Book Value*," the Proxy Statement fails to disclose the individual inputs and assumptions underlying the discount range of:

8

(i) 40% to 55% to MMA Capital's book value per share as of March 31, 2021 of $48.12; and (ii) 25% to 40% to MMA Capital's Adjusted Book Value per share as of March 31, 2021 of $37.34.

33. The valuation methods, underlying assumptions, and key inputs used by TD Securities in rendering its purported fairness opinion must be fairly disclosed to MMA Capital shareholders. The description of TD Securities' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, MMA Capital shareholders are unable to fully understand TD Securities' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving TD Securities

34. The Proxy Statement omits material information concerning potential conflicts of interest involving TD Securities.

35. The Proxy Statement provides that, "TD Securities and its affiliates have provided during the two year period prior to the date of its opinion, currently are providing, and in the future may provide investment banking and other financial services to MMAC and its affiliates for which TD Securities and its affiliates have received, or would expect to receive, compensation."

36. The Proxy Statement, however, fails to disclose the timing and nature of the past services TD Securities and/or its affiliates provided MMA Capital and/or its affiliates, including the amount of compensation TD Securities received or expects to receive for providing each service within the past two years of the date of its fairness opinion. *See* 17 C.F.R. § 229.1015(b)(4) (requiring disclosure of all material relationships between a company and its financial advisors

and the compensation received by the advisors during the past two years).

37. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

38. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

39. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

40. The Proxy Statement provides that "two [parties] executed confidentiality agreements with the Company during the Go-Shop Period and were granted access to an electronic data room containing confidential information regarding the Company and its business."

41. The Proxy Statement, however, fails to disclose the terms of the Company's confidentiality agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude potentially interested parties from making superior offers for the Company.

42. Without this information, MMA Capital shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable MMA Capital shareholder would want to know, prior to voting for or against the

Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

43. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

46. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

47. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

48. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange

Act and Rule 14a-9 promulgated thereunder.

49. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

50. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power

to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

54. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and

any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

   B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

   C.  Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

   D.  Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

   E.  Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 27, 2021          Respectfully submitted,

                **HALPER SADEH LLP**

                By: /s/ Daniel Sadeh
                Daniel Sadeh, Esq.
                Zachary Halper, Esq. (to be admitted *pro hac vice*)
                667 Madison Avenue, 5th Floor
                New York, NY 10065
                Telephone: (212) 763-0060
                Facsimile: (646) 776-2600
                Email: sadeh@halpersadeh.com
                    zhalper@halpersadeh.com

                *Counsel for Plaintiff*